### STATE v. H. C. AKELEY LUMBER COMPANY.[1]

January 29, 1909.

Nos. 16,013—(26).

**Sales of State Timber—Permits to Cut—Evidence.**

Action to recover an alleged balance due to the state from the defendant on account of alleged sales of pine timber to the defendant pursuant to Laws 1895, c. 163. Each of the several permits or contracts, executed by the respective parties to such sales, recited on its face facts showing a compliance with the provisions of the statute as to sales of state timber. *Held:*

1. Such permits, as against the defendant, were prima facie evidence of a valid sale of the timber described therein.

2. Unless the members of the board of timber commissioners, or a majority of them, one of whom is the Governor, officially sign a statement, indorsed upon the appraisal of timber which it is proposed to sell, to the effect that a sale thereof is necessary to protect the state from loss, any attempted sale of such timber and any permit issued for cut-

[1] Reported in 119 N. W. 387.

ting it are void; but other omissions and irregularities in the sale proceedings are not jurisdictional, and do not render the sale or the permit void.

3. The finding and decision of the trial court to the effect that the timber commissioners in this case did so sign such statement, that the sales and permits are valid, and that the "jack pine" and the "dead and down timber," for which the state seeks to recover the balance of the permit price, were included in such sales and permits, are sustained by the evidence.

Action in the district court for Hennepin county to recover $6,-368.67. The facts are stated in the opinion. The case was tried before Brooks, J., who ordered judgment for plaintiff for $3,833.90. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*A. Y. Merrill* and *R. J. Powell,* for appellant.

All of the contracts set forth in the complaint are void because the state auditor and the timber board, in making the pretended sale, wholly neglected to comply with the requirements of the law necessary to make a valid sale of the timber, and, if the contracts are invalid, the state cannot recover. If the sale was void, the subsequent permit issued under it was void. Since the law of 1895, pine timber is not subject to sale under any circumstances, unless it is liable to waste.

Whenever the question of the sale of any timber is submitted to the board, it is required to determine: (1) Whether such timber is subject to sale under the provisions of section 11, that is, whether the timber is liable to waste. (2) If it is for the best interests of the state that such timber shall be sold; and (3) whether a sale is necessary to protect the state from loss, "and the determination of the board shall be preserved in the records of the meeting, together with the evidence showing that such timber is subject to sale under the provisions of section 11 of this act." That is the evidence showing that the timber is liable to waste. In order to make the permits or contracts sued upon admissible in evidence for any purpose, the state itself must first show that these conditions precedent have been complied with. This proposition is perhaps as well illustrated by cases involving the validity of tax sales as any others. Sanborn v. Cooper, 31 Minn. 307; Bisbee v.

Torinus, 22 Minn. 555; Negley v. Lindsay, 67 Pa. St. 217; Blum v. Harbin (Tex.) 33 S. W. 153.

If there may be some presumption of the regularity of proceedings of public officers, in cases where the facts necessary to be shown are jurisdictional and the officer has no power to act unless these facts exist, this presumption does not obtain. Philbrook v. Smith, 40 Minn. 100.

It was not only proper but necessary that the state should allege affirmatively that the sale was made pursuant to the provisions of the statute under consideration, and having so alleged, the burden was upon the state to prove these jurisdictional facts before introducing a document, which, unless the jurisdictional facts existed, was wholly void. But if it was not necessary for the state to so plead, it has done so in this case, and having done so, the issue may be raised by answer, and if it is raised the plaintiff is bound to prove it. Dennis v. Johnson, 47 Minn. 56; O'Malley v. St. Paul, M. & M. Ry. Co., 43 Minn. 289.

Some of the statutory requirements may be non-essential. For example—the statement that the estimator was actually on the ground when he made the estimate. But it is certainly essential that this record which is made "the original record of such examinations, estimates and appraisals" should be made by the estimator himself, and that it should be signed and dated by him at the time of such entry. It is certainly essential that the record should show the amount of timber of the size which was evidently fixed by the legislature as a proper size for sale for logging purposes, and the amount and value of all timber below that standard, as well as posts, telegraph poles, ties, and their value. Clearly, the board could not act upon or determine the questions which it is required to determine until the land commissioner had ready to lay before it proper appraisal records. No appraisal could be laid before the timber board until it was properly made up, and no valid publication could be had until a proper appraisal was made.

The land commissioner is required, as secretary of the board, to keep a record thereof, containing the full minutes of each meeting and all the proceedings thereof, while minutes are required to be dated at the time when the meeting occurs, and to be signed by the commis-

sioners present. The timber board is required to determine at its meeting whether the land is subject to sale under the provisions of section 11 of the act. That is—whether it is liable to waste; whether it is for the best interests of the state that the timber shall be sold; and whether or not a sale is necessary to protect the state from loss. The determination of any one of these questions is not sufficient, and the determination of all questions is required to be preserved in the records of the meeting. There is no such record in existence, as none was ever kept, and there is no competent evidence in this case from which the court can determine that any such meeting was ever held or any such determination ever made by the board of timber commissioners that this timber was liable to waste. The indorsement or statement at the foot of the appraisal records, offered in evidence, "Sale recommended as necessary to protect the state from loss this 10th day of September, 1900," and signed by the Governor and the treasurer, cannot be said to be any record of any such determination. First—because it does not purport to be; and second—because this indorsement is required in addition to the determination of the facts essential to be determined before any sale can be ordered. Unless all these steps are taken by the board of timber commissioners, the land commissioner has absolutely no jurisdiction whatever to make the sale. These records being, each and all of them, essential to the jurisdiction of the officer to make the sale, it would seem to follow, without the specific provision of the statute with reference to the dates, that they must be dated. But when the statute itself requires all of these records to be dated at the time the act is done, it cannot be contended that the date is non-essential. If it is essential, then this whole record falls. An authority almost conclusive upon this proposition is the case of Iverslie v. Spaulding, 32 Wis. 394. See Hiles v. Cate, 75 Wis. 91; Saunderson v. Herman, 95 Wis. 48; Myrick v. Kahle, 120 Wis. 57–62.

There cannot be any estoppel in this case, because one essential element of estoppel, as well as of ratification, is absent, not only from the pleadings, but proof, in this case. It is neither pleaded nor proved that at the time the defendant cut the timber and paid its money it had any notice or knowledge whatever of the fact which rendered the sale or this contract invalid. That such knowledge is necessary in order to

raise either a ratification or estoppel is established by abundant authority. Kraus v. Thompson, 30 Minn. 64.

*Edward T. Young, Attorney General,* and *C. S. Jelley, Assistant Attorney General,* for respondent.

START, C. J.

This action was brought in the district court of the county of Hennepin to recover the balance alleged to be due to the state from the defendant on account of several alleged sales to the defendant of pine timber on lands of the state. The complaint alleged four causes of action. The allegations of each were to the effect that on November 14, 1900, the state land commissioner, at public sale held pursuant to Laws 1895, p. 349, c. 163, sold to the defendant the pine timber upon the land described therein at the price specified therein; that the parties duly entered into a written permit or contract for the sale of such timber, and for the entry upon the land by the defendant to cut and remove the timber; and, further, that pursuant to such contract the defendant cut and removed a specified amount of the timber, for which it has not paid the full contract price. Copies of the several permits were attached to the complaint and made a part thereof. Such permits on their face, in form, substance, and recitals, show a compliance with the requirements of the statute as to the sale of timber of the state. The allegations of the answer to each alleged cause of action were to the effect that the permit or contract was void, and, further, that it paid in full the agreed price for all timber cut by it, which was in excess of the actual value thereof.

The cause was tried by the court without a jury, and findings of fact made as to the first cause of action to the effect: That the defendant, pursuant to the first permit, cut and removed from the land therein described 2,074,530 feet of pine lumber, which it paid for at the permit price, $5.30 per thousand feet, except 130,560 feet thereof, known as "jack pine," for which it paid only at the rate of $3.50 per thousand, leaving an unpaid balance of $235. That on May 28, 1900, one Harry McClellan, a state estimator, entered upon the land described in the permit and made an estimate and appraisal of the timber thereon, and thereafter a report of his examination was filed in the office of the land commissioner and pasted in a book kept for that purpose in his

office, and known as "Land Examiner's Field Book No. 5." That the records of such office do not show when such report was so entered or filed, but all of it is in the handwriting of McClellan. That upon such report there was indorsed a recommendation in these words: "Sale recommended as necessary to protect the state from loss this September 10, 1900"—which was officially signed by each member of the board of timber commissioners. That such appraisal record was signed and sworn to by James McKenzie, but it is not otherwise in his handwriting. That he swore to it before a notary public then employed in the office of the land commissioner, and not otherwise. That it does not appear that McKenzie ever made an estimate or appraisal of the timber, nor that McClellan ever entered such report in the records of estimates and appraisals, except as herein stated, nor that he ever made oath to such report. That, other than as here stated, no estimate or appraisal was ever made and filed in the office of the land commissioner, or record made of any meeting of the board of timber commissioners. That, except as hereinbefore found, no report of any estimator or examiner was ever filed or entered in the office of the land commissioner, or any examination, estimate, or appraisal of the timber in question made, or any record ever made containing any minutes of any meeting of the board of timber commissioners, or any proceedings thereof. That, while it does appear that such board held meetings, it is not otherwise proven, except as may be inferred from the recitals in the permit, that the board ever determined that the timber was subject to sale, or that it was for the best interests of the state that the same should be sold, or whether or not a sale thereof was necessary to protect the said state from loss. That all of the pine timber so cut and removed was sold at said sale by the state to defendant, and was timber which it was authorized to cut and remove in and by its permit, and it was so treated by the defendant, all of which it did by virtue of such sale and permit, and not otherwise. That the defendant purchased the timber, accepted the permit, and cut and removed the timber, and made payment therefor to the extent found, without any knowledge or notice of any irregularity, omission, or defect in any of the proceedings upon which the sale and permit were made and issued, and in the full belief that all the proceedings were in accordance with the statute in such case provided, and that the sale and permit were in all respects valid.

Substantially similar facts were found as to each of the other causes of action, except as follows:

As to the second cause of action, it was found that the defendant cut and removed from the land described in the permit which is the basis of such cause of action 788,790 feet of timber known as "dead and down," the permit price of which was $7.30 per thousand feet; but the defendant paid only $4.80 per thousand feet therefor, leaving a balance unpaid of $1,971.75.

As to the third cause of action, the finding was that the defendant cut and removed from the land designated in the permit 225,120 feet of timber known as "dead and down," the permit price of which was $7.20 per thousand, for which the defendant paid only $4.70 per thousand, leaving unpaid a balance of $562.80, and, further, that appraiser McKenzie personally entered upon the land described in the permit and made an estimate and appraisal of the timber thereon.

And as to the fourth cause of action it was found that the defendant cut and removed from the land described in its permit 423,740 feet of timber known as "dead and down," the permit price of which was $7.00 per thousand, but the defendant paid therefor only $4.50 per thousand, leaving an unpaid balance of $1,064.35. The trial court, as a conclusion from the facts found, ordered judgment for the state in the sum of $3,833.90, with interest. The defendant appealed from an order denying its motion for a new trial.

It appears from the findings and the undisputed evidence that all of the timber here in question was cut and removed by the defendant from the land described in the several permits, and that all has been paid for at the permit price, except the part thereof designated as "jack pine" or "dead and down"; that the defendant paid for such timber at the respective rates per thousand stated in the trial court's findings, and no more; and, further, that the amount paid for such designated timber was included in drafts drawn on the defendant by the state auditor for payment of the timber cut and removed from the lands described in the permits.

No claim is made that the auditor had any authority to accept a less price than the permit price for any timber covered by the permits or to sell any timber at private sale. It follows, then, that, if the permits were valid and covered all of the timber cut and removed from the

lands described therein by the defendant, it is liable for the balance of the permit price thereof, which it has not paid.

1. The first contention of the defendant is that the permits were absolutely void, for the reason that the auditor and the timber board, in making the sales upon which they were based, failed to comply with the provisions of the statute relating to such sales; hence this particular action, which is based upon contract, cannot be maintained. If the premises are correct the conclusion would seem to follow. The question is whether the findings of fact and conclusions of law of the trial court to the effect that the sales and permits were valid are sustained by the evidence.

The permits were executed by both parties thereto and were received in evidence. They recited on their face facts showing a compliance with the provisions of the statute as to the sale of state timber. Therefore they were prima facie evidence as against the defendant of a valid sale of the timber therein described. Cassidy v. Smith, 13 Minn. 122 (129); Bruggerman v. True, 25 Minn. 123. Such permits are not, as suggested by the defendant, analogous to instruments relating to tax sales where it is sought to take land for the payment of taxes in proceedings in invitum, for their execution is the act of the parties thereto. The fact that the complaint alleged that the timber was sold pursuant to the provisions of the statute, and that the allegation was denied by the answer, did not change their character as prima facie evidence of the facts therein recited; for the only effect of the denial was to raise an issue as to whether the sales were made pursuant to the provisions of the statute. Dennis v. Johnson, 47 Minn. 56, 49 N. W. 383.

The defendant, however, contends that, if the burden was upon it to show that the sales and permits were void, the evidence establishes their invalidity beyond question. The evidence shows, and the trial court so found, that there were many irregularities and omissions in the proceedings culminating in the sales and the execution of the permits. The extent and character of such irregularities are indicated in the findings to which we have referred. It is quite clear that every failure to comply with the statute relating to sales of state timber is not a jurisdictional defect, which renders a sale, not simply voidable, but absolutely void.

The statute (section 18) established a board of timber commissioners, consisting of the Governor, auditor, and treasurer of the state, and prescribed the duties of the board in these words: "The Governor and one other member of said commission shall constitute a quorum for the transaction of business. In case the Governor, and at least one other member of said board, shall determine by their votes that any such sale is necessary to protect the state from loss, and before any timber shall be advertised or sold, or any permit issued for entering upon or cutting the timber from any such land, they shall indorse upon the record of each and every estimate of timber so to be advertised and sold, the statement that such sale is necessary to protect the state from loss. Said statement shall be signed by them officially, and the date of such signing affixed thereto, and unless this is done the land commissioner shall have no jurisdiction whatsoever to make such sale." This places upon the board of timber commissioners the responsibility of safeguarding the interests of the state in its timber by requiring the board to determine in each case whether a proposed sale of timber is necessary to protect the state from loss, and to indorse a statement to that effect, signed officially by the members of the board, upon every estimate and appraisal of timber which it is proposed to sell. It is apparent that, unless the members of the board of timber commissioners, or a majority of them, one of whom is the Governor, officially sign a statement, indorsed upon the appraisal and estimate of such timber as it is proposed to sell, to the effect that a sale thereof is necessary to protect the state from loss, any attempted sale of such timber and any permit issued for cutting and removing the timber are void. This court, in construing a similar statute, so held in the case of State v. Shevlin-Carpenter Co., 62 Minn. 99, 64 N. W. 81.

It, however, appears from the record of the case at bar that the members of the board substantially complied with the statute; for they severally and officially signed, stating the date, a statement indorsed upon each estimate and appraisal to the effect that a sale was necessary to protect the state from loss, and that they recommended it for that reason. It is true that there were irregularities in the several appraisals and estimates upon which the statement was indorsed; but neither this nor the fact that no record of the action of the board was shown affects its validity, for the vital fact is the statement of the members of the

board over their several signatures upon the appraisals and estimates that a sale of the timber is necessary to protect the state from loss.

This brings us to the question whether the irregularities and omissions in the proceedings with reference to the sales were jurisdictional defects, rendering the sales and permits void. The statute answers this question in the negative; for it expressly provides that, unless the statement is so indorsed and officially signed, the land commissioner shall have no jurisdiction whatsoever to make the sale. This necessarily implies that other omissions or irregularities in the sale proceedings are not jurisdictional; otherwise, the express provision as to jurisdiction to make the sale would be wholly unnecessary. From the evidence and findings of fact of the trial court we hold the sales and permits valid.

2. It is further claimed by the defendant that the "dead and down" timber, which is the basis of the second, third, and fourth causes of action, was not included in the permits, for the reason that if the term "pine timber," referred to in the granting clause of the permits, be construed in connection with the other provisions, as it must be, it means growing pine timber and excludes dead and down timber. The very purpose of the statute is to provide for the sale of timber when, and only when, it is liable to waste. It is perfectly obvious that "dead and down" timber would be more liable to waste than growing timber; hence more clearly within the purview of the statute. The permits must not only be construed as a whole, giving effect to all the provisions thereof, but also with reference to the purpose of the statute in authorizing the sale of pine timber. So construing the permits, we hold that the sales were not restricted to white and Norway pine, but that they included jack pine and dead and down timber on the lands therein described as well. The fact that the defendant paid less than the permit price for a portion of the timber cut and removed from the lands, and that the price paid was all that such timber was reasonably worth, is not material; for no one representing the state was authorized to accept less than the permit price, which represented, presumably, the average value of all the timber.

It follows that the findings of the trial court are sustained by the evidence and that its conclusion of law is correct.

Order affirmed.